# 23-648

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

YEHUDA HERSKOVIC,

*Plaintiff-Appellant*,

v.

VERIZON WIRELESS,

*Defendant-Appellee.*

_____

*On Appeal from the United States District Court
for the Eastern District of New York*

---

## BRIEF FOR DEFENDANT-APPELLEE

---

HASAPIDIS LAW OFFICES
111 Brook Street
Scarsdale, NY 10583
Tel: (914) 533-3049
Email: agh@hasapidislaw.com

MCGIVNEY KLUGER CLARK &
INTOCCIA, P.C.
80 Broad Street, 23rd Floor
New York, New York 10004

*Attorneys for Defendant-Appellee*
Cellco Partnership d/b/a Verizon Wireless

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Defendant-Appellee Cellco Partnership d/b/a Verizon Wireless, *erroneously sued as* "Verizon Wireless" ("Verizon Wireless") makes the following corporate disclosures:

Verizon Wireless is a general partnership whose partners are: (1) Bell Atlantic Mobile Systems LLC, which is wholly owned by MCI Communications Services Inc.; (2) GTE Wireless LLC, which is wholly owned by Verizon Communications Inc.; and (3) Verizon Americas Inc., which is wholly owned by Verizon Communications Inc.

Verizon Wireless further states that it is indirectly wholly owned by Verizon Communications Inc., as are the other foregoing companies; no publicly held company owns ten percent or more of Verizon Communications Inc.

# TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT**.....................................................I

**TABLE OF AUTHORITIES** .....................................................................**IV**

**I.**    **INTRODUCTION**................................................................................1

**II.**   **JURISDICTIONAL STATEMENT** ...................................................3

**III.**  **ISSUES PRESENTED** ........................................................................3

**IV.**  **STATEMENT OF THE CASE**............................................................3

    A.  VERIZON WIRELESS PAID THE PRIOR SMALL CLAIMS COURT DEFAULT JUDGMENT. ...............................................................................3

    B.  APPELLANT SUBSEQUENTLY BROUGHT THE CURRENT ACTION IN NEW YORK STATE COURT, ALLEGING IMPROPER DEBT COLLECTION AND CREDIT REPORTING. ......................................................................4

    C.  VERIZON WIRELESS REMOVED THE STATE COURT ACTION TO THE UNITED STATES DISTRICT COURT AND MOVED TO COMPEL ARBITRATION. ..................5

    D.  JUDGE LEVY RECOMMENDED GRANTING THE MOTION TO COMPEL ARBITRATION. ...............................................................................5

    E.  DISTRICT JUDGE ANN M. DONNELLY ADOPTED JUDGE LEVY'S REPORT AND RECOMMENDATION, COMPELLED ARBITRATION, AND STAYED THE ACTION. ...8

    F.  APPELLANT DELAYED FILING FOR ARBITRATION, AND JUDGE DONNELLY AGAIN ORDERED HIM TO DO SO. ..............................................................9

    G.  THE PARTIES ARBITRATED THEIR DISPUTE BEFORE THE AAA, AND THE ARBITRATOR AWARDED APPELLANT NO DAMAGES. ...................................10

    H.  VERIZON WIRELESS MOVED TO CONFIRM THE ARBITRATION AWARD, AND APPELLANT OPPOSED, MOVING TO VACATE IT. ..............................................11

    I.  JUDGE GONZALEZ CONFIRMED THE ARBITRATION AWARD AND DENIED APPELLANT'S MOTION TO VACATE. ..............................................................11

**V.  SUMMARY OF ARGUMENT** ...................................................................14

**VI.  STANDARDS OF REVIEW** ..................................................................17

**VII. ARGUMENT** ..........................................................................................17

    A. The District Court Did Not Err in Compelling Appellant's Claims to Arbitration. ...................................................................................................17

        *1. Plaintiff Had Article III Standing.* .........................................*19*

        *2. The Rooker-Feldman Doctrine is Inapplicable.* ....................*22*

        *3. The Customer Agreement and Its Arbitration Provision Did Not "Merge" with the Default Judgment.* ....................................*23*

        *4. Res Judicata Does Not Preclude Appellant's Claims or "Quash" Verizon Wireless's Contract Rights.* .................................*27*

    B. The District Court Did Not Err in Confirming the Arbitration Award. ...........................................................................................................29

        *1. Badgerow Does Not Support Overturning Confirmation of the Award.* .......................................................................................*32*

        *2. The Least Sophisticated Debtor Standard Does Not Support Overturning Confirmation of the Award.* ...............................*34*

**VIII.  CONCLUSION** ...................................................................................**37**

**CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(A)** ....................................**38**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adult Use Holdings Inc. v. FaZe Clan Inc.*,
  2022 WL 4538338 (S.D.N.Y. Sept. 28, 2022)......................................................... 29
*Allen v. McCurry*,
  449 U.S. 90 (1980) .............................................................................................. 27
*Badgerow v. Walters*,
  142 S. Ct. 1310 (2022) ........................................................................................ 32
*Banco de Seguros del Estado v. Mut. Marine Off., Inc.*,
  344 F.3d 255 (2d Cir. 2003).................................................................................. 30
*Bear, Stearns & Co. v. 1109580 Ontario, Inc.*,
  409 F.3d 87 (2d Cir. 2005).................................................................................... 17
*Blue Bell, Inc. v. Western Glove Works Ltd.*,
  816 F. Supp. 236 (S.D.N.Y. 1993)........................................................................ 30
*Campaniello Imports, Ltd. V. Saporiti Italia S.p.A.*,
  117 F.3d 655 (2d Cir. 1997).................................................................................. 18
*Chelsea Square Textiles v. Bombay Dyeing & Mfg. Co., Ltd.*,
  189 F.3d 289 (2d Cir. 1999).................................................................................. 19
*Clomon v. Jackson*,
  988 F.2d 1314 (2d Cir.1993)................................................................................. 35
*Cont'l Ins. Co. v. Allianz Ins. Co.*,
  52 F. App'x 557 (2d Cir. 2002) ............................................................................ 26
*Dirussa v. Dean Witter Reynolds, Inc.*,
  121 F.3d 818 (2d Cir. 1997).................................................................................. 29
*District of Columbia Court of Appeals v. Feldman*,
  460 U.S. 462 (1983)............................................................................................. 22
*Dodson International Parts, Inc. v. Williams International Co. LLC*,
  12 F.4th 1212 ...................................................................................................... 32
*Doscher v. Sea Port Grp. Sec., LLC*,
  832 F.3d 372 (2d Cir. 2016), abrogated by
  *Badgerow v Walters*, 596 US 1 [2022] ............................................................... 32
*Easterling v. Collecto, Inc.*,
  692 F.3d 229 (2d Cir. 2012).................................................................................. 35
*EDP Med. Computer Sys., Inc. v. United States*,
  480 F.3d 621 [2d Cir. 2007].................................................................................. 27
*Eisen v. Venulum Ltd.*,
  244 F. Supp. 3d 324 (W.D.N.Y. 2017) .................................................................. 26

iv

*Elite Inc. v. Texaco Panama Inc.*,
   777 F. Supp. 289 (S.D.N.Y. 1991)....................................................... 30

*Esquire Trade & Finance, Inc. v. CBQ, Inc.*,
   562 F.3d 516 (2d Cir. 2009)............................................................... 27

*Exp.-Imp. Bank of the Republic of China v. Gren.*,
   13 CIV. 1450 HB, 2013 WL 4414875 (S.D.N.Y. Aug. 19, 2013) ....................... 25

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
   544 U.S. 280 (2005) ......................................................................... 23

*FCS Advisors, Inc. v. Fair Fin. Co.*,
   605 F.3d 144 (2d Cir. 2010)............................................................... 24

*Gentner v. Shulman*,
   55 F.3d 87 (2d Cir. 1995).................................................................. 24

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
   552 U.S. 576 (2008) ......................................................................... 29

*In re Am. Express Fin. Advisors Sec. Litig.*,
   672 F.3d 113 (2d Cir. 2011).................................................................. 5

*Kotsopoulos v. Asturia Shipping Co.*,
   467 F.2d 91 (2d Cir.1972)................................................................. 24

*Maddox v. Bank of New York Mellon Tr. Co., N.A.*,
   19 F.4th 58 (2d Cir. 2021)........................................................... 20, 21

*Marine Transit Corp. v. Dreyfus*,
   284 U.S. 263 (1932) ......................................................................... 32

*Mastrobuono v. Shearson Lehman Hutton*,
   514 U.S. 52 (1995) ........................................................................... 18

*Meese v. Keene*,
   481 U.S. 465 (1987) ......................................................................... 20

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017)................................................................. 17

*Monahan v. New York City Dep't of Corr.*,
   214 F.3d 275 (2d Cir. 2000)............................................................... 27

*Morrison v. Midland Funding, LLC*,
   2021 WL 2529618 (W.D.N.Y. June 21, 2021) ............................. 16, 24, 25

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ....................................................................... 18, 19

*NML Capital, Ltd. v. Republic of Arg.*,
   2015 WL 3542535 (S.D.N.Y. June 5, 2015) ............................................ 25

*Oldroyd v. Elmira Sav. Bank, FSB*,
   134 F.3d 72 (2d Cir.1998)................................................................. 18

*Orix Credit All., Inc. v. Horten*,
   965 F. Supp. 481 (S.D.N.Y. 1997)....................................................... 25

v

*Pike v. Freeman*,
266 F.3d 78 (2d Cir. 2001) ................................................................ 18

*Rana v. Equifax Inc.*,
2023 WL 3017803 (E.D.N.Y. Apr. 20, 2023) ............................... 20, 21

*ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*,
564 F.3d 81 (2d Cir. 2009) ................................................................ 29

*Rooker v. Fidelity Trust Co.*,
263 U.S. 413 (1923) ......................................................................... 22

*Schweizer v. Trans Union Corp.*,
136 F.3d 233 (2d Cir. 1998) .............................................................. 36

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .................................................................... 19, 20

*State of N.Y. v. Oneida Indian Nation of N.Y.*,
90 F.3d 58 (2d Cir.1996) ................................................................... 17

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ............................................................ 19, 20, 21

*United Paperworkers Int'l Union AFL–CIO v. Misco, Inc.*,
484 U.S. 29 (1987) ................................................................ 30, 31, 35

*Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*,
304 F.3d 200 (2d Cir. 2002) .............................................................. 30

*Westinghouse Credit Corp. v. D'Urso*,
371 F.3d 96 (2d Cir. 2004) ................................................................ 24

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*,
126 F.3d 15 (2d Cir.1997) ................................................................. 29

*Zlotnick v. Equifax Info. Servs., LLC*,
583 F. Supp. 3d 387 (E.D.N.Y. 2022) .......................................... 20, 21

**Statutes**

9 U.S.C. § 9 ...................................................................................... 29
9 U.S.C. § 11(b) ............................................................................... 30
Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq.* ............................ 3
Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.* ................. 3
25 U.S.C. § 1441(a) ............................................................................. 3
28 U.S.C. § 1291 ............................................................................. 3, 4

**Rules**

Fed. R. App. P. 26.1 ............................................................................. 1
Fed. R. App. P. 32(a)(7)(B) ................................................................ 38

vi

Fed. R. App. P.32(a)(5)..............................................................38

Fed. R. App. P.32(a)(6)..............................................................38

Fed. R. App. P.32(f)..................................................................38

**Other Authorities**

*Ian R. MacNeil et al.*, *Federal Arbitration Law: Agreements, Awards, and Remedies under the Federal Arbitration Act* § 9.2.3.1 (Supp. 1999) ..........38

## I.   INTRODUCTION

Plaintiff-Appellant Yehuda Herskovic ("Appellant") admits that he brought this appeal solely because the arbitrator denied him damages.  But as the trial court correctly pointed out, "[t]he Court's role is to determine whether the Arbitrator had the authority to 'reach a certain issue, not whether the arbitrators correctly decided that issue.'"  Here, three separate judges and the arbitrator all held that the parties had a binding arbitration agreement covering Appellant's claims.  In other words, the arbitrator had authority to hear the case, and the court had authority to confirm the arbitrator's award.

Appellant has dragged out this simple case for nearly five years, resisting every order entered on ever-shifting grounds.  Appellant failed to comply with District Judge Ann M. Donnelly's initial order compelling arbitration, and the court was forced to issue a second order nine months later.  After Appellant finally submitted his claims to the American Arbitration Association ("AAA"), the parties participated in an evidentiary hearing, and the arbitrator found in Appellant's favor.  However, the arbitrator awarded Appellant no damages.

When Defendant-Appellee Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") moved to confirm the award, Appellant brought a cross-motion to vacate it, which the district court denied, entering the award as a judgment.  Appellant now challenges not only the judgment, but also the district court's prior

order compelling arbitration. Specifically, Appellant states that he "is aggrieved by the denial of damages and brings this appeal to challenge the authority to compel arbitration." Appellant's Opening Brief ("AOB") at 6.

None of the issues Appellant purports to raise on this appeal provide grounds for overturning the trial court's orders compelling arbitration and confirming the arbitration award. The trial court properly rejected these same (or similar) arguments (*e.g.*, Appellant's suggestion that he was stripped of Article III standing because he was awarded no damages by the arbitrator, or that the district court had no subject matter jurisdiction under the Rooker-Feldman doctrine), and those not raised below are waived (*e.g.*, Appellant's claim that the Full Faith and Credit Act bars his own action). In short, the district court did not err in compelling Appellant's claims to arbitration under the parties' broadly-worded arbitration agreement and in confirming the resultant arbitration award. Appellant's disappointment that the arbitrator denied his requested damages is the motivation behind this appeal, but it has no bearing on the propriety of the district court's decisions.

## II.    JURISDICTIONAL STATEMENT

The district court had original jurisdiction over this action pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and the removal statute, 25 U.S.C. § 1441(a).  This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## III.    ISSUES PRESENTED

1.    Whether the district court erred in compelling Appellant's claims to arbitration.

2.    Whether the district court erred in confirming the arbitration award and entering it as a judgment in this action.

## IV.    STATEMENT OF THE CASE

### A. VERIZON WIRELESS PAID THE PRIOR SMALL CLAIMS COURT DEFAULT JUDGMENT.

On or about December 4, 2018, Appellant received a default judgment of $718 against Verizon Wireless in Civil Court for the City of New York, Kings County ("Default Judgment").  (A-159).[1]  The Default Judgment did not rescind the parties'

---

[1] Numbers in parentheses preceded by "A-" refer to the pages of the "Joint Appendix."  Appellant filed a three volume, consecutively paginated "Joint Appendix."  However, the Appendix is not, in fact, joint.  Appellant failed to consult with Verizon Wireless before unliterally compiling and filing the "Joint Appendix."  Although the Appendix is dramatically over-inclusive, it contains the challenged orders and the relevant filings.  Accordingly, the citations in this brief are to Appellant's Appendix.

Customer Agreement. (A-691-92). Instead, it awarded Appellant $698 for "defective services rendered" and $20 for costs. *Id.* Plaintiff admits that Verizon Wireless "duly satisfied the judgment in full" prior to his filing this action. (A-695, ¶ 9); *see also* (A-160).

### B. APPELLANT SUBSEQUENTLY BROUGHT THE CURRENT ACTION IN NEW YORK STATE COURT, ALLEGING IMPROPER DEBT COLLECTION AND CREDIT REPORTING.

On or about March 28, 2019, Appellant brought this action against Verizon Wireless in New York State Supreme Court, Kings County. (A-110-15). In his Verified Complaint, Appellant admitted that on December 27, 2017, he signed a sales receipt and Customer Agreement at a Verizon Wireless store at 100 Wall Street in Manhattan for wireless telephone equipment and services for his home phone ending in -4565. (A-33, 110). Appellant alleges that, after about a month, he began experiencing problems with the phone service, including dropped calls, and that he eventually decided to cancel the service. *Id.*

According to Appellant, on December 10, 2018, a Verizon Wireless customer service supervisor agreed to waive the early termination fee so that he could take his business to another company. (A-33, 111). Verizon Wireless, however, refused to waive the $176 early termination fee. (A-33, 111-12). Verizon Wireless also sent the unpaid fee to outside collections and reported the debt to credit reporting

agencies. (A-33; 112-14). Appellant alleges that as a result, he was denied credit, suffered emotional distress, and incurred $30,000 in damages. (A-33; 112-14).

### C. VERIZON WIRELESS REMOVED THE STATE COURT ACTION TO THE UNITED STATES DISTRICT COURT AND MOVED TO COMPEL ARBITRATION.

On June 6, 2019, Verizon Wireless removed the State Court Action to the United States District Court for the Eastern District of New York. (A-116-120). Appellant did not seek to remand the case. On July 25, 2019, Verizon Wireless filed a Motion to Compel Arbitration, based on the Arbitration Provision in the parties' Customer Agreement. (A-127-139; 142-152). The Motion to Compel was fully briefed (including supplemental briefing), and brought before Magistrate Judge Robert M. Levy. (A-73-67; 129-178; 183-216).

### D. JUDGE LEVY RECOMMENDED GRANTING THE MOTION TO COMPEL ARBITRATION.

In a 7-page Report and Recommendation issued on January 23, 2020, Judge Levy analyzed Verizon Wireless's Motion to Compel using the two-step inquiry set forth in *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011): "(1) did the parties enter into a valid arbitration agreement? and (2) is the dispute within the scope of the arbitration agreement?" (A-35). As to the first step, Judge Levy found:

> [P]laintiff accepted the terms of the Customer Agreement on at least
> two separate occasions over more than four years of service with
> Verizon Wireless. Plaintiff first accepted the Customer Agreement

when initiating service and opening his Verizon Wireless account in April 2014, and a second time in December 2017…. Plaintiff does not contest the validity or enforceability of the Arbitration Provision. Although plaintiff does complain that the Arbitration Provision and Verizon's conduct are unfair, there is nothing in the record to suggest that the agreement was improper; the terms of Verizon Wireless service -- especially the Arbitration Provision -- are conspicuous in the Customer Agreement.

(A-36).

As to the second step -- whether the dispute falls within the scope of the

arbitration agreement -- Judge Levy found that it did, explaining:

Here, the Arbitration Clause covers "any dispute that in any way relates to or arises … from any equipment, products and services you receive from [Verizon Wireless]." (See Dkt. No. 18-2 at 7.) This is sufficiently broad to create a strong presumption of arbitrability. *See Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (the phrase "any claim or controversy arising out of or relating to the agreement" is "the paradigm of a broad clause").… Because the parties have consented to a broad agreement to arbitrate and plaintiff has failed to overcome the strong presumption of arbitrability that attaches to such agreements, I respectfully recommend that defendant's motion to compel arbitration be granted.

(A-36-37).

In his Report, Judge Levy made the following express factual findings

regarding the parties' agreement to arbitrate:

It is undisputed that plaintiff first activated his wireless cellular service with Verizon Wireless on or about April 2, 2014 in Brooklyn, New York. (Declaration of Daniel Reed, sworn to July 24, 2019 ("Reed Decl."), Dkt. No. 13-3, ¶ 5, Ex. A. ) At the point of sale, plaintiff signed a sales receipt (the "Customer Receipt"), in which he agreed to the terms of the Customer Agreement. (*Id.*, Ex. A at 2 ("I AGREE TO THE

CURRENT VERIZON WIRELESS CUSTOMER AGREEMENT [. . . .]")….

The Verizon Wireless Customer Agreement, to which plaintiff agreed to be bound, contains an arbitration provision (the "Arbitration Provision"), as follows:

> YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT…. WE ALSO BOTH AGREE THAT: … ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES) WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS[.]

(*Id.* ¶ 6, Ex. B at 8). The Customer Agreement also provides, in pertinent part:

> HOW DO I ACCEPT THIS AGREEMENT?
> You accept this agreement by:
> • Agreeing in writing, by email, over the phone, or in person;
> • Opening a package that says you are accepting by opening it; or
> • Activating your service.

(*Id.* ¶ 6, Ex. B at 1). The activation letter sent to plaintiff also referenced and enclosed a copy of the Customer Agreement. (*Id.* ¶ 7, Ex. C.)

The Arbitration Provision applies to "any dispute that *in any way relates to or arises out of* this agreement or from any equipment, products and services you receive from [Verizon Wireless]." (*See id.*, Ex. B at 8 (emphasis added)). Thus, it covers all subsequent disputes between the parties, including those related to other equipment or services. Regardless, the sales receipt and customer agreement that plaintiff executed at 100 Wall Street in December 2017 contain identical language. (*See* Supplemental Declaration of Daniel Reed, Esq., dated Sept. 27, 2019, Dkt. No. 18-2, Exs. A and B.)

7

(A-33-34).

Consequently, Judge Levy recommended that the District Court compel arbitration and stay the action (A-37-38).

### E.  DISTRICT JUDGE ANN M. DONNELLY ADOPTED JUDGE LEVY'S REPORT AND RECOMMENDATION, COMPELLED ARBITRATION, AND STAYED THE ACTION.

Appellant filed two objections to Judge Levy's Report, and Verizon Wireless responded.  (A-217-235).  In his objections, Appellant argued "that he did not agree to arbitration, that the Federal Arbitration Act does not apply to the agreement, and that the defendant waived arbitration by removing the case to federal court."  (A-26).

On March 6, 2020, Judge Donnelly issued her own 7-page Memorandum and Order analyzing Appellant's objections and granting Verizon Wireless's Motion to Compel.  (A-24-31).  Judge Donnelly found that there was no factual support in the record for Appellant's conclusory assertion that "he did not sign the 2014 and 2016 customer receipts, and that the customer agreements are 'false documents' with 'false signatures.'"  As Judge Donnelly noted:

> Appellant "admits that he signed multiple contracts with the company, and he was a Verizon customer for the period covered by the signed agreements. (EOF Nos. 1 at 1; 14 at 1.)  In short, there is no credible evidence that the records that the defendant produced are forgeries or otherwise false.  Accordingly, Judge Levy's conclusion that the 'plaintiff accepted the terms of the [c]ustomer [a]greement on at least two separate occasions over more than four years of service with Verizon Wireless' was correct."

8

(A-27-28). Judge Donnelly also found that the FAA applied to the arbitration provision ("The parties' agreements reference the statute explicitly, providing that '[t]he Federal Arbitration Act applies to this agreement.'") and that Verizon Wireless had not waived arbitration by removing the case to federal court ("'[T]he mere act of removing [a] claim from state to federal court is hardly the sort of aggressive participation in litigation' that constitutes waiver."). (A-29-30).

### F. Appellant Delayed Filing for Arbitration, and Judge Donnelly Again Ordered Him to Do So.

Six months after Judge Donnelly compelled Appellant's claims to arbitration, on or about September 22, 2020, Appellant requested that the court reconsider its prior order. (A-240-43; 247-251). Verizon Wireless opposed. (A-245-46; 254-55).

On December 28, 2020, Judge Donnelly issued an order noting that "[o]ver nine months have passed" since she granted Verizon Wireless's Motion to Compel, but that Appellant "has not made a demand for arbitration as required by the parties' customer agreements" and instead "continues to argue that there is no arbitration agreement between the parties." (A-39). Judge Donnelly granted Appellant "an additional 90 days to initiate arbitration by filing an arbitration demand" or face dismissal of his claims for failure to prosecute. (A-40-41).

### G. The Parties Arbitrated Their Dispute before the AAA, and the Arbitrator Awarded Appellant No Damages.

After Judge Donnelly issued her second order, Appellant continued to delay, initiating an arbitration in the wrong forum (before the Better Business Bureau) in March 2021. (A-309). Appellant finally filed a Demand for Arbitration ("Demand") with the AAA on or about September 12, 2021 -- 18 months after he initiated the action. (A-407-412). Appellant also purported to file an Amended Complaint in the district court. (A-462-467).

The AAA opened an arbitration entitled *Yehuda Herskovic v. Verizon Wireless*, AAA Case No. 01-21-0016-5580 ("Arbitration") and appointed Michael D. Blechman as the Arbitrator. (A-496). Appellant continued to challenge the Arbitrator's jurisdiction to hear the case. (A-485, 498). After the issue was fully briefed, the Arbitrator found that he had "jurisdiction to arbitrate this case because there is a valid arbitration agreement covering the claim." (A-471).

The Arbitrator held an evidentiary hearing on June 9, 2022, with both Appellant and Verizon Wireless in attendance, presenting testimony and documents. (A-485). On June 30, 2022, the Arbitrator issued an award in Appellant's favor ("Award") and ordered Verizon Wireless to cease debt collection and "take all steps reasonably necessary to correct" the credit reporting of the termination fee. AAA

10

485-86; 500-01).[2]

However, the Arbitrator found that Appellant failed to establish "any compensable monetary damages resulting from [Verizon Wireless's] actions." In concluding that Appellant should not be awarded damages, the Arbitrator found that: (1) Appellant had provided insufficient evidence to prove that "the denial of his applications for three credit cards was due to [Verizon Wireless's] reporting of his failure to pay the termination fee," and (2) "none of [Appellant's] proffered theories in support of a damage claim have merit." (A-486; 500). On July 7, 2022, the AAA served the Award on all parties and closed its file. (A-486; 502-03).

## H. VERIZON WIRELESS MOVED TO CONFIRM THE ARBITRATION AWARD, AND APPELLANT OPPOSED, MOVING TO VACATE IT.

On May 23, 2022, the case was reassigned to District Judge Hector Gonzalez. (A-8). On September 29, 2022, Verizon Wireless brought its Motion to Confirm the Arbitration Award. (A-479-487). Appellant opposed the Motion to Confirm, and brought what the trial court construed as a Motion to Vacate the Award. (A-504-532). The parties also submitted additional briefing in opposition and support of these motions. (A-714-747).

## I. JUDGE GONZALEZ CONFIRMED THE ARBITRATION AWARD AND DENIED APPELLANT'S MOTION TO VACATE.

On April 3, 2023, Judge Gonzalez issued an 11-page order granting Verizon

---

[2] Appellant has fully complied with the Award by ceasing all collection activity and credit reporting the account.

Wireless's Motion to Confirm and denying Appellant's Motion to Vacate. (A-12-23). First, Judge Gonzalez rejected Appellant's request to reconsider the issue of arbitrability:

> Two separate judges in this District as well as the Arbitrator considered whether arbitration was appropriate: (i) in recommending that Defendant's motion to compel arbitration be granted, the magistrate judge considered Defendant's briefs and their accompanying exhibits and held two conferences with the parties, ECF No. 25; (ii) the district judge reviewed Plaintiff's objections to the magistrate judge's report and recommendation de novo, and separately determined that Defendant's motion to compel arbitration should be granted, ECF No. 29; and (iii) the Arbitrator held a preliminary hearing and considered both parties' briefing on the issue of arbitrability and determined that he had jurisdiction to arbitrate the case, ECF No. 72-1 at 2. Accordingly, the Court finds that Plaintiff has not met his burden of showing "exceptional circumstances" requiring reconsideration of the issue of arbitrability…. In sum, the Court will not vacate the Court's orders compelling arbitration and thus, will not vacate the Award on this basis.

(A-18).

Second, Judge Gonzalez rejected Appellant's argument that the court lacked subject matter jurisdiction over his claims. (A-19-20). Appellant based this argument on two assertions: (1) that the *Rooker-Feldman* abstention doctrine barred review of his Default Judgment, and (2) that the Arbitrator's decision not to award him damages retroactively stripped him of Article III standing. *Id.* at 19. As to the *Rooker-Feldman* doctrine, Judge Gonzalez concluded:

> As discussed previously, *see supra* section I, the instant action concerns

12

Defendant's attempt to collect the termination fee pursuant to the Customer Agreement -- it is not a review of the judgment Plaintiff obtained in small claims court. Accordingly, the *Rooker-Feldman* doctrine does not apply here.

*Id.* As to the standing issue, Judge Gonzalez reasoned as follows:

In his complaint, Plaintiff alleges that he is owed damages in the amount of $30,000 because of Defendant's alleged wrongful debt collection and its effect on his credit report. ECF No. 2-2 at 6–7. Defendant articulated a "concrete" harm, alleged that he suffered financial, emotional and psychological harm as a result of Defendant's actions, and argued that he is entitled to money damages. The Arbitrator's determination that Plaintiff "failed to establish any compensable money damages," ECF No. 72-6 at 1, does not strip Plaintiff of standing. In other words, Plaintiff cannot now argue that he has not suffered a concrete injury because he is unhappy with the outcome of the arbitration. Accordingly, the Court has subject matter jurisdiction over the instant action.

(A-19-20).

Similarly, Judge Gonzalez rejected Appellant's contention that the Arbitrator exceeded his powers in denying Appellant damages. (A-20-22). Appellant had argued that the action arises from a "post-judgment injury," and as a result, should not have been sent to arbitration. *Id.* at 20. Judge Gonzalez reiterated that "the instant action is not a review or appeal of the judgment Plaintiff obtained in small claims court." (A-22). Moreover, the parties' "Customer Agreement explicitly provides that the Arbitrator is entitled to determine damages:

YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. THERE'S NO JUDGE OR JURY IN ARBITRATION, AND THE PROCEDURES MAY BE DIFFERENT, **BUT AN**

13

**ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF**, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD.

(A-21) (emphasis in order). Based on this language, Judge Gonzalez found that "the Arbitrator is well within his authority to decide to award -- or not to award -- damages." at A21-A22.

Finally, Judge Gonzalez held that the Customer Agreement's limitation of liability provisions did not support vacating the Award. As the court observed, awards must be enforced "'if there is a barely colorable justification for the outcome reached.'" (A-22). In this case, "the Arbitrator provided support for his grant of an Award in Plaintiff's favor, and his decision that damages were unwarranted." *Id.* Accordingly, the court held that its "view on whether the limitation of liability provisions in the Customer Agreement are objectionable is immaterial." *Id.*

On April 11, 2023, the clerk entered judgment on Judge Gonzalez's order. (A-11).

## V.    SUMMARY OF ARGUMENT

Appellant no longer challenges the validity of the parties' arbitration agreement. Instead, he claims that the district court lacked authority to compel arbitration in the first place -- and later to confirm the Arbitration Award -- based on four legal theories. First, Appellant argues that he had no Article III standing because the Arbitrator ultimately awarded him no damages. AOB at 25-29.

14

Appellant misconstrues Article III, which requires only that a plaintiff allege a concrete injury, not prove actual damages. Here, as the trial court found, appellant "alleged that he suffered financial, emotional and psychological harm as a result of [Verizon Wireless's] actions, and argued that he is entitled to [$30,000 in] money damages." Thus, the fact that Appellant was awarded no damages does not affect his standing.

Second, Appellant contends that under the *Rooker-Feldman* doctrine, the district court was barred from reviewing his Default Judgment. AOB at 29-37. But as Judge Gonzalez found, this action "concerns [Verizon Wireless's] attempt to collect the termination fee pursuant to the Customer Agreement -- it is not a review of the judgment Plaintiff obtained in small claims court." (A-19). To the contrary, Appellant admits that Verizon Wireless "duly satisfied the judgment in full" by paying him $718.00 before he initiated this action. (A-695, ¶ 9; 160). Indeed, Appellant's stated basis for bringing this action was not to enforce the Default Judgment, but to dispute Verizon Wireless's debt collection and credit reporting of a separate $176.00 early termination fee. (A-110-114; 462-467).

Third, Appellant asserts that the "merger" doctrine precludes arbitration of his claims. AOB at 38-44. Specifically, Appellant argues that the Default Judgment merged with the underlying debt, replacing the parties' Customer Agreement and voiding the Arbitration Provision. However, there is no legal or factual support for

15

this argument. It is black letter law that an arbitration provision survives termination of a contract, and the parties' Customer Agreement specifically states that the Arbitration Provision "continues to apply even after you have stopped receiving services from us." (A-205). Moreover, even where an "underlying court judgment merges with and extinguishes an underlying contractual debt, the contract itself and its obligations -- including the ability to compel the arbitration of subsequent claims -- do not similarly merge." *Morrison v. Midland Funding, LLC*, No. 20-CV-6468-FPG, 2021 WL 2529618, at *4 (W.D.N.Y. June 21, 2021).

Fourth and relatedly, Appellant attempts to apply *res judicata* to argue that the Default Judgment "quashed the disconnection [early termination] fee as part of the same series of transactions." AOB at 39. This argument appears in his section on merger, and is evidently linked to the Full Faith and Credit Act discussion in his Summary. However, *res judicata* allows for claim preclusion, not "quashing" of a contractual right, like Verizon Wireless's right to charge an early termination fee under the Customer Agreement. As the trial court noted, "[t]he Arbitrator's consideration of the outcome of Plaintiff's small claims court action as evidence in determining damages does not transform the underlying action into an appeal of a state judgment or 'merge with the [small claims court] judgment.'" (A-17).

Finally, Appellant advances an argument captioned "the effect on the least sophisticated consumer." AOB at 44-49 (all caps removed). This caption is an

apparent reference to the standard used to analyze alleged misrepresentations under the FDCPA.  In this section, Appellant seems to re-argue the merits of his FCRA and FDCPA claims, which the Arbitrator adjudicated.  However, revisiting the merits of an arbitral decision is prohibited, and an award must be confirmed "if there is even a barely colorable justification for the outcome reached."  *Bear, Stearns & Co. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005) (internal quotation marks and citations omitted).

## VI.    STANDARDS OF REVIEW

Appellate courts review *de novo* whether the parties have contractually bound themselves to arbitrate, and review for clear error the factual findings supporting that conclusion.  *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 72–73 (2d Cir. 2017).  Similarly, when reviewing a judgment confirming an arbitration award, legal conclusions are reviewed *de novo*, and findings of fact for clear error.  *See Pike v. Freeman,* 266 F.3d 78, 86 (2d Cir. 2001).

## VII.   ARGUMENT

### A. THE DISTRICT COURT DID NOT ERR IN COMPELLING APPELLANT'S CLAIMS TO ARBITRATION.

"The [FAA] creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."  *State of N.Y. v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 61 (2d Cir.1996) (internal quotation marks omitted).  The FAA was enacted to promote the enforcement of

17

privately entered agreements to arbitrate "according to their terms." *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 54 (1995) (internal quotation marks omitted). "Through the FAA, Congress has declared a 'strong federal policy favoring arbitration as an alternative means of dispute resolution.'" *Chelsea Square Textiles v. Bombay Dyeing & Mfg. Co., Ltd.*, 189 F.3d 289, 294 (2d Cir. 1999), quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir.1998).

In deciding whether a dispute is arbitrable, courts must answer two questions: (1) "whether the parties agreed to arbitrate," and, if so, (2) "whether the scope of [that] agreement encompasses the claims" at issue. *Campaniello Imports, Ltd. V. Saporiti Italia S.p.A.*, 117 F.3d 655, 666 (2d Cir. 1997). Consistent with the strong federal policy in favor of arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

On this appeal (contradicting the position he took in the trial court), Appellant does not dispute that he agreed to arbitrate, or that the Arbitration Provision in the Customer Agreement encompasses the claims at issue. Appellant essentially concedes that the district court correctly decided these factual issues. Instead, Appellant focuses on four legal theories that he did not raise until he brought his

18

Motion to Vacate the Arbitration Award. The first two theories -- lack of standing and the Rooker-Feldman doctrine -- involve the district court's supposed lack of subject matter jurisdiction. The second two -- merger and res judicata -- focus on the purported preclusive effect of the Default Judgment. As discussed below, none of these four theories supports overturning the district court's order compelling arbitration.

### 1. Plaintiff Had Article III Standing.

Appellant's first argument is that "there is no jurisdiction under Article III." AOB at 24. He contends that "[n]ot getting a new credit card, losing a credit card incentive, and losing sleep is insufficient to confer jurisdiction on the federal courts." *Id.* This contention is incorrect.

To satisfy the Article III standing requirement, a plaintiff's injury must be "concrete" -- that is, "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (internal quotation marks omitted). "[C]ertain harms readily qualify as concrete injuries under Article III." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). "The most obvious are traditional tangible harms, such as physical harms and monetary harms." *Id.* Thus, "[i]f a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *Id.* "Various intangible harms can also be concrete … [including], for example, reputational harms, disclosure of private information, and

intrusion upon seclusion." *Id.* (citing *Meese v. Keene*, 481 U.S. 465, 473 (1987) (reputational harms).

Here, Plaintiff's claim that he had no Article III standing is both legally and factually mistaken. In his Complaint, Plaintiff asserted monetary harm of $30,000, based on his alleged credit denials and emotional distress from collection "harassment." *See* (A-112-114). Such monetary harms "readily qualify as concrete injuries" under *Spokeo* and *TransUnion*. Although the Arbitrator ultimately found that Appellant's "evidence was insufficient to prove that the denial of his applications for three credit cards was due to [Verizon Wireless's] reporting of his failure to pay the termination fee," this does not mean that the Arbitrator retroactively removed Appellant's Article III standing. (A-500). This would be a nonsensical interpretation of the standing requirement under *TransUnion*, which holds only that plaintiffs asserting a statutory violation must allege a concrete injury to establish standing. The *TransUnion* Court certainly did not intend plaintiffs to be stripped of standing (and hence courts deprived of subject matter jurisdiction) *ex post facto* if plaintiffs later failed to prove their alleged monetary damages at trial.

The cases cited by Appellant in support of his claim that he had no standing -- *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58 (2d Cir. 2021); *Rana v. Equifax Inc.*, No. 22-CV-07749 (HG), 2023 WL 3017803 (E.D.N.Y. Apr. 20, 2023); and *Zlotnick v. Equifax Info. Servs., LLC*, 583 F. Supp. 3d 387 (E.D.N.Y.

2022) -- are all readily distinguishable.  AOB at 26-29.  None of these cases involved allegations of monetary harm caused by credit denials or collection efforts, as Appellant alleged and attempted to prove here.

In *Maddox*, the court held that the putative class action plaintiffs failed to allege any concrete harm caused by the defendant's delayed recording of their mortgage discharge.  19 F.4th at 64-65.  In fact, the plaintiffs alleged no harm whatsoever -- even "reputational harm."  *Id.* at 65.  Similarly, in *Rana*, the plaintiff failed to identify any "specific instances" of harm, "such as the dissemination of inaccurate information to third parties or a denial of credit."  2023 WL 3017803, at *1.  Finally, in *Zlotnick*, the plaintiff failed "to allege any particularized injury or actual dissemination to third-party creditors."  583 F. Supp. 3d at 392.  Here, by contrast, Appellant testified at the AAA evidentiary hearing that the reporting at issue was actually disseminated to potential creditors.  *See* (A-500).  This fact alone is sufficient to confer standing on Appellant under the FCRA.  *See TransUnion*, 141 S. Ct. at 2209 ("In short, the 1,853 class members whose reports were disseminated to third parties suffered a concrete injury in fact under Article III.").  Appellant additionally alleged (and attempted to prove in the Arbitration) that he was denied three credit cards and sustained $30,000 in damages.  *Id.*

Finally, the claim is illogical.  On the one hand Appellant claims that he can establish standing to bring a case by alleging credit denials and emotional distress

from collection "harassment." On the other hand, he asserts that, if he cannot prove his damages, then this Court somehow never had standing in the first place. No authority supports this logic.

Thus, Appellant's claim that he had no standing is false, and the district court did not err in rejecting it.

### 2. *The Rooker-Feldman Doctrine is Inapplicable.*

Appellant next asserts that he brought this case to "extend" his Default Judgment, and that by removing it to federal court, Verizon Wireless "invited the federal court to review and reject the state judgment through an arbitration proceeding" in violation of the Rooker-Feldman doctrine. AOB at 30. This assertion is based on a misunderstanding of the Rooker-Feldman doctrine and a mischaracterization of this action.

The Rooker-Feldman doctrine precludes lower federal courts from exercising appellate jurisdiction over state-court judgments. *See Gentner v. Shulman*, 55 F.3d 87, 89 (2d Cir. 1995) ("Under [the Rooker-Feldman] doctrine, federal district courts lack jurisdiction to review state court decisions whether final or interlocutory in nature.") (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). However, the Supreme Court has explained that Rooker–Feldman is a narrow doctrine, confined to "cases brought by state-court losers complaining of injuries caused by state-court

judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

Here, Appellant's Rooker-Feldman theory fails under *Exxon Mobil* for three interrelated reasons. First, it is Appellant who brought this action, not Verizon Wireless, the "state-court loser." Second, Verizon Wireless did not invite any review or rejection of the Default Judgment by removing this case to the district court. Quite the opposite: Verizon Wireless satisfied the Default Judgment in full before Appellant even filed this action. (A-160; 695, ¶ 9). Third, as Judge Gonzalez correctly found, "the instant action concerns [Appellant's] attempt to collect the termination fee pursuant to the Customer Agreement -- it is not a review of the judgment Plaintiff obtained in small claims court." (A-19).

Accordingly, the district court did not err in ruling that the Rooker-Feldman doctrine does not apply to the facts of this case.

### 3. The Customer Agreement and Its Arbitration Provision Did Not "Merge" with the Default Judgment.

Appellant's third theory is that the district court erred in compelling arbitration because the Default Judgment "merged" with the parties' Customer Agreement, so that his claims were no longer subject to arbitration. AOB at 39. Appellant argues that under the "merger" doctrine, his claims are "not governed by

the purported Customer Agreement, but by the judgment." *Id.* at 41.  Again, there

is no factual or legal support for this argument.

"The general rule under New York and federal law is that a debt created by

contract merges with a judgment entered on that contract, so that the contract debt is

extinguished and only the judgment debt survives." *Westinghouse Credit Corp. v.*

*D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004); accord *Kotsopoulos v. Asturia Shipping*

*Co.*, 467 F.2d 91, 95 (2d Cir.1972) ("Once a claim is reduced to judgment, the

original claim is extinguished and merged into the judgment; and a new claim, called

a judgment debt, arises.").  Based on this rule, courts have held that the interest rate

charged on a judgment debt should be based on statute, not the parties' contract.  *See*

*FCS Advisors, Inc. v. Fair Fin. Co.*, 605 F.3d 144, 148 (2d Cir. 2010) (holding that

"absent 'clear, unambiguous and unequivocal' language expressing an intent that a

particular interest rate apply to judgments or judgment debts, a general choice-of-

law provision … does not alter the application of the federal rate to the calculation

of post-judgment interest in diversity cases").

Appellant's attempt to use the merger doctrine to avoid the Arbitration

Provision in the Customer Agreement is meritless for multiple reasons.  First, while

a contract debt may be extinguished via merger, the contract itself remains

enforceable.  For example, in *Morrison v. Midland Funding, LLC*, No. 20-CV-6468-

FPG, 2021 WL 2529618 (W.D.N.Y. June 21, 2021), the plaintiff had a prior

24

judgment entered against her on a contract debt. *Id.* at *1. In opposing the defendant's motion to compel arbitration of her claims, she asserted that "the merger doctrine renders the collection claim beyond the scope of the arbitration provision." *Id.* at *3.

The *Morrison* court rejected this assertion, explaining that "[a]lthough merger may extinguish a contract debt when it merges with a judgment debt, the underlying contract itself is not extinguished." *Id.* (citing *Exp.-Imp. Bank of the Republic of China v. Gren.*, No. 13 CIV. 1450 HB, 2013 WL 4414875, at *3 (S.D.N.Y. Aug. 19, 2013). "Rather, when an individual claim is adjudicated, the merger principle merely extinguishes that specific claim that was adjudicated and replaces it with a final judgment." *Id.* (citing *Orix Credit All., Inc. v. Horten*, 965 F. Supp. 481, 485 (S.D.N.Y. 1997). Indeed, courts have recognized that extinguishing the underlying contract when a specific claim regarding the contract reaches judgment "would inappropriately weaken rights or destroy identities which the prevailing party had in [its] original cause." *NML Capital, Ltd. v. Republic of Arg.*, Nos. 14 Civ. 8601, 14 Civ. 8988, 14 Civ. 8630 5, 2015 WL 3542535, at *4 (S.D.N.Y. June 5, 2015) (internal quotations and citations omitted). "Thus, even after a judgment is entered on the contractual debt, the underlying agreement remains in effect and may support subsequent breaches or claims." *Morrison,* 2021 WL 2529618, at *3.

Additionally, as both the district court and the AAA arbitrator ruled, the parties' Arbitration Provision survived the termination of Appellant's Customer Agreement. (A-28, 471; AOB at 19). The Arbitration provision applies broadly to "any dispute that in any way relates to or arises out of this Agreement or from any equipment, products and services you receive from us" and "continues to apply even after you have stopped receiving services from us." (A-205). Such "a broad arbitration clause in an agreement survives and remains enforceable for the resolution of disputes arising out of that agreement subsequent to the termination thereof and the discharge of obligations thereunder." *Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 333 (W.D.N.Y. 2017); *see also Cont'l Ins. Co. v. Allianz Ins. Co.*, 52 F. App'x 557, 558-59 (2d Cir. 2002) (arbitration clause survived termination of contract because there was no subsequent "express rescission of the arbitration provision" by the parties).

Finally, as the district court properly found, Appellant's claims in this action arise from the Customer Agreement, not the Default Judgment: "The fact remains that Appellant filed the instant action arguing that [Verizon Wireless] wrongfully engaged various debt collection companies to collect the termination fee pursuant to the parties' Customer Agreement." (A-16-17). Thus, "the instant action concerns [Verizon Wireless's] attempt to collect the termination fee pursuant to the Customer Agreement -- it is not a review of the judgment [Appellant] obtained in small claims

court." (A-19). The Default Judgment was a money judgment of $718 for "defective services rendered," which Verizon Wireless paid in full. (A-691-92; 695, ¶ 9). By contrast, this action is for Verizon Wireless's subsequent collection and credit reporting of the Customer Agreement's early termination fee.

Accordingly, the district court did not err in rejecting Appellant's merger theory.

### 4. *Res Judicata Does Not Preclude Appellant's Claims or "Quash" Verizon Wireless's Contract Rights.*

Appellant's fourth argument is that *res judicata* "quashed the disconnection [early termination] fee as part of the same series of transactions." AOB at 39. This is a variation on Appellant's merger and Rooker-Feldman arguments, and is equally misplaced.

"The doctrine of *res judicata*, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000), citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Thus, *res judicata* "bars later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Esquire Trade & Finance, Inc. v. CBQ, Inc.*, 562 F.3d 516, 520 (2d Cir. 2009) (quoting *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624

[2d Cir. 2007]). The party asserting res judicata bears the burden of proving these elements. *Monahan*, 214 F.3d at 285.

*Res judicata*, however, does not support overturning the district court's order compelling arbitration. *Res judicata* allows for claim preclusion, not "quashing" of a contractual right. Appellant apparently believes that because the Arbitrator considered the Default Judgment in ruling that Verizon Wireless should not have charged him the early termination fee, the Arbitrator also held that the Default Judgment rescinded the Customer Agreement. But as the district court noted, "[t]he Arbitrator's consideration of the outcome of Plaintiff's small claims court action as evidence in determining damages does not transform the underlying action into an appeal of a state judgment or 'merge with the [small claims court] judgment.'" (A-17).

Even more fundamentally, the prior Small Claims Court action did not involve the same claims at issue here for alleged violations of the FDCPA and FCRA. The collection and credit reporting of the early termination fee were never at issue in the Small Claims Court action; only Appellant's allegations of "defective service." (A-159-60).

Thus, Appellant cannot invoke *res judicata* to preclude his own claims in this action, or "quash" the Customer Agreement.

28

### B. THE DISTRICT COURT DID NOT ERR IN CONFIRMING THE ARBITRATION AWARD.

"[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir.1997) (alteration in original) (internal quotation marks omitted). Section 9 of the FAA commands that "a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11." *Hall St. Assocs., L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 582 (2008) (quoting 9 U.S.C. § 9). *See also Adult Use Holdings Inc. v. FaZe Clan Inc.*, 2022 WL 4538338, at *8 (S.D.N.Y. Sept. 28, 2022) ("Having denied the petition to vacate or modify the arbitration award, the Court must now confirm that award.).

"[A]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Dirussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 821 (2d Cir. 1997) (internal quotations omitted). Section 10(a)(4) of the FAA allows courts to vacate an arbitral award "where the arbitrators exceed their powers." 9 U.S.C. § 10(a)(4). Importantly, however, the Second Circuit has "consistently accorded the narrowest of readings" to this provision. *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009) (internal quotation marks omitted). Specifically, the inquiry under this provision "focuses on

whether the arbitrators had the power based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.,* 304 F.3d 200, 220 (2d Cir. 2002) (internal quotation marks omitted).

Similarly, courts may only modify or correct an order in similarly limited circumstances. 9 U.S.C. § 11(b) allows a court to do so "[w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted." Courts must construe these provisions narrowly. *See Elite Inc. v. Texaco Panama Inc.*, 777 F. Supp. 289, 292 (S.D.N.Y. 1991); *Blue Bell, Inc. v. Western Glove Works Ltd.*, 816 F. Supp. 236, 240 (S.D.N.Y. 1993).

Notably, courts do not consider "whether the arbitrators correctly decided [the] issue." *Banco de Seguros del Estado v. Mut. Marine Off., Inc.*, 344 F.3d 255, 262 (2d Cir. 2003) (internal quotation marks omitted). If the parties agreed to submit an issue for arbitration, courts will uphold a challenged award as long as the arbitrator offers "a barely colorable justification for the outcome reached." *Id.* at 260 (internal quotation marks omitted). In other words, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," a court's conviction that the arbitrator has "committed serious error" in resolving the disputed issue "does not suffice to overturn his decision." *United*

30

*Paperworkers Int'l Union AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987). "An arbitrator's decision is entitled to substantial deference, and the arbitrator need only explicate his reasoning under the contract in terms that offer even a barely colorable justification for the outcome reached in order to withstand judicial scrutiny." *Id.* (internal quotation marks omitted).

Here, a review of the Award shows that it was based on the evidence presented at the evidentiary hearing and the application of federal and New York law. The Arbitrator ruled that because the Default Judgment amounted to a "refund" of Appellant's account payments, Verizon Wireless should no longer attempt to collect or credit report the early termination fee. (A-500).

However, the Arbitrator also found that Appellant failed to meet his burden of proof "to establish any compensable damages." *Id.* Specifically, the Arbitrator ruled that Appellant's "evidence was insufficient to prove that the denial of his applications for three credit cards was due to [Verizon Wireless's] reporting of his failure to pay the termination fee." *Id.* The Arbitrator further found that "none of [Plaintiff's] proffered theories in support of a damage claim have merit." *Id.* Accordingly, there is a colorable basis for upholding the Award, and the district court properly confirmed it under the FAA.

Moreover, as discussed in section VII.A above, none of the arguments Appellant raises on appeal -- *i.e.*, regarding standing, the Rooker-Feldman doctrine,

31

merger or *res judicata* -- have any merit.  Appellant further asserts two additional arguments directed specifically at overturning confirmation of the Award:  (1) that under *Badgerow v. Walters*, 142 S. Ct. 1310 (2022), the district court had no jurisdiction to confirm the Award (AOB at 8, 25), and (2) that the Award was wrongly decided and should be overturned from a public policy perspective (AOB at 44-49).  Both of these arguments fail as a matter of law.

### 1. *Badgerow Does Not Support Overturning Confirmation of the Award.*

Appellant cites *Badgerow* for the proposition that federal courts may not establish subject matter jurisdiction over a petition to confirm an arbitration award by "looking through" to the underlying action.  Appellant claims that under *Badgerow*, the district court had no jurisdiction to confirm the Arbitration Award. AOB at 7-8.  But *Badgerow* is inapposite here, because it was decided in the context of an independent suit brought to vacate an arbitration award, where no federal court had ordered arbitration in the first instance.

Where, as here, "a court with subject-matter jurisdiction orders arbitration and then stays the suit pending resolution of the arbitral proceedings, that court retains jurisdiction to confirm or set aside the arbitral award." *Dodson International Parts, Inc. v. Williams International Co. LLC*, 12 F.4th 1212, 1227 (holding that "[b]ecause the district court in this case was properly vested with federal-question jurisdiction when the action was initially filed, and because it merely stayed the action during

32

the pendency of arbitration proceedings, it retained subject-matter jurisdiction to confirm the award").

Indeed, "where the court has authority under the [FAA] ... to make an order for arbitration, the court also has authority to confirm the award or to set it aside for irregularity, fraud, ultra vires, or other defect." *Marine Transit Corp. v. Dreyfus*, 284 U.S. 263, 275–76 (1932). *See also Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 387 (2d Cir. 2016), abrogated on other grounds by *Badgerow v Walters*, 596 US 1 [2022] ("practitioners who wish to preserve access to federal courts for later disputes over arbitrators, subpoenas, or final awards [may] attempt to 'lock in' jurisdiction by filing a federal suit first, followed by motions to compel and a stay of proceedings"); *Ian R. MacNeil et al.*, *Federal Arbitration Law: Agreements, Awards, and Remedies under the Federal Arbitration Act* § 9.2.3.1 (Supp. 1999) (explaining that when a district court stays proceedings pending arbitration, "[a]fter an award, parties desiring to confirm, vacate, or modify the award, can return to the federal court in which the stayed litigation is pending for determination of those issues," since "[t]he court had federal question subject matter jurisdiction and has never lost it.").

This action was removed to federal court based on subject matter jurisdiction under the FCRA and FDCPA (A-117-20), and Appellant never moved to remand the case. On March 6, 2020, this Court ordered arbitration pursuant to the parties'

33

broadly-worded Arbitration Provision, which plainly encompasses Plaintiff's claims (A-24-32). The Court stayed the action, but retained jurisdiction over the case, twice directing Appellant to comply with its March 6, 2020 order, *see* A-39-41), and also requesting that the parties file regular updates on the arbitration (A-7, Minute Entry for 7/13/2021). There is no merit to Appellant's claim that the district court's subject matter jurisdiction evaporated after the AAA Arbitrator issued his ruling. As discussed above, Appellant's Default Judgment had no effect on his contractual duty to arbitrate the claims at issue in this action.

Thus, *Badgerow* provides no basis for overturning the district court's order confirming the Arbitration Award.

### 2. *The Least Sophisticated Debtor Standard Does Not Support Overturning Confirmation of the Award.*

Appellant's final argument is difficult to decipher, but seems to suggest that the district court's confirmation order should be overturned because the Arbitration Award was incorrectly decided against him as a "least sophisticated debtor." AOB at 44-49. Appellant complains that Verizon Wireless never reported his positive payment history, but was "religious about dunning Appellant over the disconnection fee." AOB at 46. Appellant also states that he "is in a unique position to vindicate the rights of consumers at large." AOB at 48. According to Appellant, Verizon Wireless "does not have the liberty to override the FCRA to keep pretending that the purported debt is accurate." *Id.*

These arguments are red herrings.  The Arbitrator agreed with Appellant that because of the refund he received for "defective services rendered," Verizon Wireless should not have charged the early termination fee.  (A-500).  The Arbitrator ordered Verizon Wireless to withdraw the debt from collections and request removal of the reporting (which Appellant has fully complied with).  *Id.*  What Appellant is really disputing is the Arbitrator's conclusion that Appellant failed to establish any compensable damages.  *Id.*  However, appellate courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."  *United Paperworkers*, 484 U.S. at 38.  Even if "a court is convinced [the arbitrator] committed serious error," this "does not suffice to overturn his decision."  *Id.*

Further, the least sophisticated debtor standard has no bearing on this appeal. Under this standard, [w]hether a collection letter is 'false, deceptive, or misleading' under the FDCPA is determined from the perspective of the objective 'least sophisticated consumer."  *Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012) (*quoting Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993) (internal quotation marks omitted).  "The basic purpose of [this standard] is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd."  *Clomon*, 988 F.2d at 1318.  "The FDCPA does not extend to every bizarre or idiosyncratic

interpretation by a debtor of a creditor's notice." *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 236–37 (2d Cir. 1998) (internal quotations omitted).

The least sophistication debtor standard is irrelevant on this appeal. First, Appellant did not reference this standard in the proceedings below, and it does not appear in any of the orders issued. Second, Appellant does not offer any specific argument based on this standard -- he simply cites it. Given Appellant's own failure to develop any argument based on the least sophisticated debtor standard, it is irrelevant to this appeal.

Accordingly, Appellant's references to the "least sophisticated debtor" and his implication that this Court should reconsider the merits of the Arbitrator's Award provide no grounds for overturning the district court's confirmation order.

# VIII.  CONCLUSION

Appellant has failed to identify any clear error in the district court's factual findings.  The district court properly compelled his claims to Arbitration and correctly confirmed the resulting Award.  Appellant was not stripped of standing by the Arbitrator's decision not to award him damages, and his Default Judgement did not "merge" with the Customer Agreement.  Similarly, neither the Rooker-Feldman doctrine, nor the related doctrine of res judicata apply.  Accordingly, the orders and judgment in this action should be affirmed.

Dated:  December 20, 2023

Respectfully submitted,

HASAPIDIS LAW OFFICES

By    *s/ Annette G. Hasapidis*
HASAPIDIS LAW OFFICES
111 Brook Street
Scarsdale, NY 10583
Tel: (914) 533-3049
Email: agh@hasapidislaw.com

MCGIVNEY KLUGER CLARK &
INTOCCIA, P.C.
80 Broad Street, 23rd Floor
New York, New York 10004

*Attorneys for Defendant-Appellee*
Cellco Partnership d/b/a Verizon Wireless

37

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a)

I hereby certify that this brief complies with Fed. R. App. P. 32(a)(7)(B) because it contains 8,472 words, excluding the portions of the brief exempted by Rule 32(f), according to the count of Microsoft Word.

I further certify that this brief complies with the typeface and type-style requirements of Rule 32(a)(5)-(6) because it is printed in a proportionally spaced 14-point font, Times New Roman.

Dated:  December 20, 2023

HASAPIDIS LAW OFFICES


By____*s/ Annette G. Hasapidis*____
HASAPIDIS LAW OFFICES
111 Brook Street
Scarsdale, NY 10583
Tel: (914) 533-3049
Email: agh@hasapidislaw.com

MCGIVNEY KLUGER CLARK &
INTOCCIA, P.C.
80 Broad Street, 23rd Floor
New York, New York 10004

*Attorneys for Defendant-Appellee*
Cellco Partnership d/b/a Verizon Wireless